## THE OREGON.
## THE FRANK COE.
### (District Court, S. D. New York. October 22, 1918.)

Collision ⊕96—Vessel colliding with ferryboat held at fault.

In a collision between a vessel and a ferryboat in a river, while angling in to their respective berths, *held*, that the vessel was at fault and that the ferryboat was not.

In Admiralty. Collision between the ferryboat Oregon and the steam lighter Frank Coe. The Frank Coe held at fault.

Decree affirmed 280 Fed. 238.

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Pierre Brown, of New York City, for the Frank Coe.

Geo. E. Hargrave, of New York City, for the Oregon.

LEARNED HAND, District Judge. This case presents the usual conflict of testimony, without very much by which it may be corrected. Upon the whole the witnesses for the Coe impressed me more favorably than those for the Oregon, yet the difference is not enough to justify a finding based upon their relative credibility. As is common, I can come to a conclusion more certainly by a consideration of the probabilities than by an attempt to apportion the weight to be given to the several oaths of those who appeared.

It is agreed that the Coe remained near the east side of the river until not far below the Brooklyn Bridge. In passing under it she had got over no further than the center of the channel. Now Pier 26 is only a very short distance above the western abutment, so that it seems strange to me that she should have exposed her starboard side to the full force of the ebb by going nearly across stream, rather than by making up to say Pier 28 or 29 preparatory to berthing at Pier 30. However, the testimony on both sides appears to put her no further off shore than 200 feet when opposite Pier 26, and I must conclude that she preferred to navigate nearly across the stream rather than to oppose the full force of the ebb further out in the channel. Whether her course thereafter was directly upstream, or whether she was angling in towards the pier ends, appears to me incapable of determination. I incline to suppose that she angled in slightly all the time, basing this conclusion upon the angle of collision, which I shall discuss, and upon the probability that such would be her course. The collision occurred somewhere between Piers 26 and 28, and between 100 and 200 feet off shore, but it is quite impossible to assign it more definitely.

As to the course of the Oregon, I accept the statement of her witnesses that she came down upon a substantially straight course from well out in the stream when under the Manhattan Bridge to the outer corner of her rack. I cannot believe, in spite of the advantage of the tide, that she would have held her course in mid-channel till nearly opposite the slip. To do so would have embarrassed her entrance into the slip, unless she was prepared to go well below the racks and then to enter against the tide. This, it is true, is what many vessels would do, so situated, rather than to enter with the tide, but none of the witnesses suggest that she did it, and it would not, I think, be a maneuver common to ferries which approach more directly. It seems pretty clear that, if she meant to enter without going below, her natural course was to keep angling into the slacker water she would find close to the New York shore. This would enable her to make her berth without having her course continually changed as she crossed the river with the ebb on her quarter.

I therefore place the vessels upon crossing courses, a conclusion corroborated by the angle of collision. The Coe insists that there was no angle, but that it was a case of head and head meeting, and this is borne out also by the report of Day, the Oregon's master. The story of Hines, the Oregon's passenger, though certainly not accurate in

degree, I give credence to, and it is to the contrary, as well as those of the other witnesses for the Oregon, and I am disposed to accept their version. I cannot think that in broad daylight two vessels could come into collision upon exactly opposite courses without either yielding a point to the other. Such folly seems to me scarcely credible. Furthermore, at least two of the Coe's witnesses agree with the rest, that the force of the blow threw the Oregon's head heavily to starboard, which presupposes an angle of collision. The help rendered the Oregon after the collision also fortifies this testimony. Even if the Coe were further inshore than the Oregon, yet still, if the Oregon were angling in, the collision would not have been head on. The angle was probably very small in any case, but I think that it was an appreciable one.

If the vessels were in this position, I see no reason for changing the usual incidence of the respective duties of vessels upon crossing courses. The Oregon's course was patent to all; she was a ferry upon a known course to a notorious destination. I know of no rule which forbade her entering her slip on a course direct, but gradually angling in. It is true that she was probably shaving the pier ends rather close, but that, though a fault, did not contribute to the collision between herself and a vessel which, like the Coe, was not emerging, but was herself doing the same thing. It was not a proximate cause of this accident, since it was obvious to the Coe.

The Coe did not keep out of the Oregon's way, and the Oregon did keep her course and speed, and concededly did give at least one whistle. It is urged that the case is one where the ferry attempted to push other craft out of her way and should be held for the consequences. My answer is that, if the courses were crossing, she had the right of way, and that she was obliged to "push out of the way" all burdened vessels. At least I cannot suppose the Coe's story correct, which says that the vessels were on opposite courses, but safely starboard to starboard. This would not have resulted in any collision at all. If, on the other hand, they were on meeting courses, we are again faced with the necessity of supposing that neither yielded till they met head on, which, as I have said, is incredible.

Even if I am to suppose that the Coe was inside of the Oregon and headed straight upstream, yet if the Oregon were on a steady course angling in, the case still seems to me only of crossing courses, because the Oregon's course would in that event lead her across the Coe's bows. In any aspect the Coe's proper navigation was to port herwheel and ease out into the stream. My conclusion is either that the Coe was inattentive until too late, or that she tried, being near to her slip, to force the Oregon's rights.

On the whole case, therefore, I find the Coe at fault and the Oregon not at fault. Settle decrees in accordance with these findings.